BRYAN CAVE LLP, #145700
Jay A. Zweig (No. 011153)(jay.zweig@bryancave.com)
Melissa R. Costello (No. 020993)( melissa.costello@bryancave.com)
One Renaissance Square
Two North Central Avenue, Suite 2200
Phoenix, Arizona  85004-4406
Telephone:   (602) 364-7000

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| TODD MCFARLANE PRODUCTIONS, INC.; TMP INTERNATIONAL, INC., a Michigan corporation; TODD MCFARLANE ENTERTAINMENT, INC., a California corporation; and TODD MCFARLANE,<br><br>Plaintiffs,<br><br>vs.<br><br>AL SIMMONS and MELANIE SIMMONS, husband and wife,<br><br>Defendants. | No. _____<br><br>**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND OTHER RELIEF** |

Plaintiffs, Todd McFarlane Productions ("TMP"), TMP International, Inc. ("TMPI"), Todd McFarlane Entertainment, Inc. ("TME"), collectively ("the McFarlane Companies") and Todd McFarlane ("McFarlane"), for their Verified Complaint for Injunctive Relief and Other Relief against Defendants, allege as follows:

**NATURE OF THE CASE**

1.     This is an action for Lanham Act violations, actual and threatened misappropriation of trade secrets, and other claims.  Plaintiffs seek injunctive relief and monetary damages.

2.     Defendants Al Simmons and Melanie Simmons (collectively, "Defendants" or the "Simmons") are former TMPI employees who breached fiduciary duties and engaged in unlawful, tortious conduct while they were still employed by TMPI.  TMPI

trusted Defendants and, based upon that trust and Defendants' agreement not to disclose confidential information about the McFarlane Companies, Defendants accessed trade secret and confidential information about the McFarlane Companies while they worked at TMPI. The Defendants' misappropriation of the McFarlane Companies' trade secrets and disclosure of the McFarlane Companies' confidential information have damaged the McFarlane Companies and McFarlane, and threatens to cause other irreparable harm to the McFarlane Companies and McFarlane. Additionally, Defendants have violated Plaintiffs' federally protected and common law intellectual property rights.

## THE PARTIES

3. TMP is an Arizona corporation that is authorized to and regularly conducts business in Maricopa County, Arizona.

4. TMPI is a Michigan corporation that is authorized to and regularly conducts business in Maricopa County, Arizona.

5. TME is a California corporation.

6. McFarlane is an Arizona resident.

7. Defendants Al Simmons and Melanie Simmons, also known as Melanie Baird-Simmons, are husband and wife and residents of Maricopa County, Arizona. All actions taken by Defendants as alleged herein were taken on behalf of themselves and their marital community.

8. Defendants have taken actions and caused events to occur in Maricopa County, Arizona, out of which TMP's claims arise. Venue and jurisdiction are appropriate in this Court pursuant to 28 U.S.C § 1331 and 28 U.S.C. § 1391(b).

## BACKGROUND

### TMP's Business

9. TMP is a publishing, entertainment and production company providing products and services. The industry is highly competitive and substantial efforts are required to secure new business, maintain customers, and promote TMP's brands.

10. TMPI, among other functions, designs, manufactures and distributes products.

11. TME is an entertainment company, which oversees and produces programming and other content.

12. The McFarlane Companies' financial success and viability depends upon maintaining strong relationships with its customers and vendors and also relies on the reputation and property rights of the McFarlane Companies and McFarlane.

13. The McFarlane Companies disclose confidential information to their staff including, but not limited to, information regarding customers and prospective customers, history of accounts, product development and promotional efforts, costs, employees, marketing methods and plans, support, processes, proprietary methods, technical specifications, and financial information.

14. Plaintiffs' confidential, proprietary, and trade secret information was compiled through and by the use of Plaintiffs' ingenuity, time, marketing, and product development strategies, pricing, labor, significant financial investment, investigation, and long experience, rendering this information a critical asset.

15. Plaintiffs take reasonable steps to protect their confidential, proprietary, and trade secret information, its customer base, and its goodwill. The McFarlane Companies require their employees to execute confidentiality and non-disclosure agreements, do not share their trade secret information, and keeps this information secure.

**Defendants' Employment with TMPI and Obligations**

16. TMPI employed Al Simmons. In his trusted positions for TMPI, Al Simmons was exposed to and accessed a great deal of the McFarlane Companies' confidential information and trade secrets.

17. With TMPI's permission, as necessary, Al Simmons worked in the McFarlane Companies' office, warehouse, and out of his home office to conduct the McFarlane Companies' business.

18.     TMPI employed Melanie Simmons as its human resources executive. In this trusted position, Melanie Simmons was exposed to and accessed a great deal of the McFarlane Companies' confidential information and trade secrets. Upon information and belief, Melanie Simmons has aided and abetted Al Simmons in the unlawful conduct described in this Complaint.

19.     As a condition of the Simmons' employment by TMPI, the Simmons were required to and did sign acknowledgements of TMPI's Employment Handbook and policies ("Simmons Agreements"). Further, as an HR manager at TMPI, Melanie Simmons was responsible for having new hires sign the same agreement, which included confidentiality and non-disclosure requirements.

20.     In the Simmons Agreements, the Simmons agreed, among other things: (1) not to use or disclose the McFarlane Companies' business information, including products, sources, costs of products, or any other information, during their employment and after employment terminates; (2) not to use unpublished or copyrighted materials; and (3) to maintain confidentiality concerning the McFarlane Companies and McFarlane. The Simmons Agreements protect the McFarlane Companies' legitimate interests in their customer base, confidential information, and goodwill.

21.     TMPI would not have employed Al or Melanie Simmons or provided them with access to its confidential, proprietary, and trade secret information, if they had not agreed to maintain the confidentiality of the McFarlane Companies' information and refrain from using or disclosing the information, on their own behalf or on behalf of any other third party.

22.     The McFarlane Companies' confidential, proprietary, and trade secret information is not readily accessible to their competitors, and Simmons would not have been exposed to this information if they had not agreed to the restrictive covenants in the Simmons Agreements.

23.     In early 2011, Al Simmons approached TMPI and McFarlane stating that he desired to write or have co-authored an autobiography about his life (the "Book").

4

24. McFarlane and TMPI questioned that decision, but discussed with Al Simmons that so long as he was accurate with regard to any mentions of the McFarlane Companies and McFarlane, and honored his obligations to them, that Al Simmons was free to pursue the Book on his free time.

25. Later in 2011, Al Simmons requested and Todd McFarlane agreed to participate in a background discussion with Al Simmons and a ghostwriter that Al Simmons had hired from Scottsdale Multi-Media, Inc. McFarlane again cautioned Al Simmons to make sure that the Book did not infringe on any of the McFarlane Companies' or McFarlane's rights and that the Book be accurate. McFarlane also communicated again to Al Simmons that he questioned the purpose of the Book and did not endorse it.

26. In 2012, Al Simmons published the Book, entitled "The Art of Being Spawn," which is riddled with knowing untruths, inaccuracies, misappropriations of the McFarlane Companies' trade secrets, disclosures of the McFarlane Companies' and McFarlane's confidential information, and infringements on the McFarlane Companies' and McFarlane's intellectual property rights.

27. One of the most egregious examples of false and misleading information in the Book is Al Simmons' suggestion in the Book that his life was allegedly the inspiration for or provided any background for the "Spawn" character. Al Simmons, who was flattered and eagerly gave his consent to McFarlane in 1992 for his name to be a part of "Spawn," was not the inspiration for "Spawn's" central character and no one has ever confused that character with Defendant Al Simmons. Curiously, Defendant Al Simmons has, over the years, as "Spawn" enjoyed popularity, remarked on how his association with Plaintiffs has provided him with some name recognition or notoriety, where he had none before "Spawn." Defendant Simmons has, in effect, traded on Plaintiffs' fame, brand and copyright protected creation, and now is deliberately using falsities in the Book to further attempt to improperly capitalize and infringe upon the McFarlane Companies' property interests and McFarlane's name, likeness and identity.

28. TMPI and McFarlane took steps to point out the fundamental problems and wrongful and tortious content in the Book to the Simmons, but Defendants refused to cease publishing the Book and to retract any copies or content that they had sold or distributed.

29. Al Simmons also wrongfully and tortiously threatened wider distribution of the Book and further damage to the reputation and goodwill of the McFarlane Companies and McFarlane, unless McFarlane and TMPI paid the Simmons an exorbitant sum of money in exchange for that and other alleged but unfounded claims.

30. Simmons is violating his contractual obligations by disclosing and using the confidential and proprietary information of the McFarlane Companies.

31. The Simmons have wrongfully used the McFarlane Companies' confidential and trade secret information to promote the Book.

32. As a result of Defendants' actions, the McFarlane Companies and McFarlane have been harmed and face continuing harm and irreparable injury by losing customers, goodwill and the value of the McFarlane Companies' proprietary information, which will continue unless Defendants are restrained.

33. As a further result of Defendants' actions, Plaintiffs' property rights, reputation and business expectancies have been wrongfully damaged.

## COUNT I

**ACTUAL AND THREATENED MISAPPROPRIATION OF TRADE SECRETS**
**(Arizona Uniform Trade Secrets Act**
**Ariz. Rev. Stat. Ann. § 44-401, *et seq.*)**

34. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-33.

35. The confidential and proprietary information regarding the McFarlane Companies' customers, services, contract terms, development plans, employees, customer preferences, and other business information constitute trade secrets, because the McFarlane Companies derive independent economic value from that information not being generally known to the public and not being readily ascertainable by proper means

by other persons who can obtain economic value from its disclosure or use, and because the information was the subject of reasonable efforts by the McFarlane Companies to maintain its secrecy.

36. The McFarlane Companies invested substantial time and money in developing and maintaining its confidential and proprietary information. The McFarlane Companies' confidential and proprietary information is not known outside of the McFarlane Companies and could be learned by others, if at all, only by the expenditure of considerable time, effort, and expense.

37. Only as a result of their positions with the McFarlane Companies were the Simmons given access to extensive confidential and proprietary information of the type described herein.

38. Defendants are obligated by their agreements with TMPI and by applicable law to maintain the secrecy of the McFarlane Companies' confidential information. Nonetheless, Defendants threaten to breach, have breached, and inevitably will breach these duties by utilizing or disclosing the McFarlane Companies' trade secrets and confidential information.

39. Defendants will be and have been unjustly enriched by their misappropriation of the McFarlane Companies' trade secrets, and, unless restrained, will continue to use, divulge, threaten to and otherwise misappropriate the McFarlane Companies' trade secrets.

40. Defendants' misappropriation of the McFarlane Companies' trade secrets has been willful and malicious.

41. The McFarlane Companies and McFarlane have been injured, irreparably and otherwise, and are threatened with additional and ongoing injuries as a result of Defendants' threatened or actual misappropriation of trade secrets, as alleged above.

42. The McFarlane Companies will suffer or have suffered damages as a result of Defendants' actions in an amount to be determined at trial, and because its remedy at law is inadequate, seeks injunctive relief to recover and protect its information, its goodwill

and other legitimate business interests. The McFarlane Companies also seek to recover from Defendants any gains, profits and advantages obtained as a result of the wrongful acts alleged herein in an amount to be determined and an award of exemplary damages and attorneys' fees.

## COUNT II

## COMMON LAW UNFAIR COMPETITION

43. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-42.

44. Plaintiff McFarlane owns an enforceable right to his own name, likeness and identity.

45. Plaintiff McFarlane is extremely well known as a creator, artist and innovator in the comic book and entertainment industries.

46. Defendants, without permission, used Plaintiff McFarlane's name, likeness, and identity in such a way that Plaintiff McFarlane is identifiable from such use. Defendants misappropriated Plaintiff McFarlane's name, likeness, and identity in association with Defendants' Book by, among other things:

   a. including Plaintiff McFarlane's name in the Book's cover art and on its title page, with the words "with contributions by *Spawn* Creator Todd McFarlane";

   b. utilizing Plaintiff McFarlane's name, likeness, and identity throughout the Book; and

   c. utilizing Plaintiff McFarlane's name, likeness, and identity in promotional material for purposes of advertising or selling, or soliciting purchases of the Book. Several examples of this include stating: "Todd McFarlane named Al . . . as the alter ego of the Spawn character," and "Al and Todd have lived nearly parallel lives."

47. Defendants' misappropriation was made in an effort to attract a larger audience to the Book. Specifically, Defendants sought to increase sales of the Book by falsely implying in the Book, in promotional materials, and in other communications that:

  a. Plaintiff McFarlane assisted in the creation of the Book;

  b. Plaintiff McFarlane endorsed the Book;

  c. Plaintiff McFarlane is affiliated with the creation and distribution of the Book; and

  d. Defendants contributed to the creation of the *Spawn* comic book, and its key characters.

48. The aforementioned misappropriation of Plaintiff McFarlane's name, likeness, and identity was done for Defendants' pecuniary gain and profit.

49. Plaintiff McFarlane did not consent or otherwise agree to Defendants' appropriation of his name, likeness and identity, and such unauthorized appropriation has resulted in an invasion into Plaintiff McFarlane's right to privacy, and damage to the commercial value of Plaintiff McFarlane's persona.

50. Defendants undertook the foregoing acts to gain an unfair competitive advantage over the McFarlane Companies, and Defendants are unfairly competing in the marketplace.

51. As a result of Defendants' actions, the McFarlane Companies and McFarlane have been injured and face immediate and irreparable injury.  The McFarlane Companies and McFarlane are threatened with irreparable harm through, without limitation, the loss of customers, income and goodwill in amounts that may be impossible to determine unless Defendants are enjoined and restrained by order of this Court.

52. As a proximate result of the foregoing, Plaintiff McFarlane also has been injured in an amount not yet fully determined, but believed to be in excess of $75,000, exclusive of costs and interests.

53. In addition to the foregoing, as a result of Defendants' misappropriation, Plaintiff McFarlane has suffered and will continue to suffer irreparable harm through, without limitation, the loss of goodwill, for which he has no adequate remedy at law. Unless Defendants' misappropriation is enjoined by this Court, Plaintiff McFarlane will continue to suffer a risk of irreparable harm.

9

54. Defendants knowingly, intentionally, wantonly and willfully undertook the foregoing acts with knowledge of and disregard for the McFarlane Companies' and McFarlane's rights, and with the intention of causing harm to the McFarlane Companies and McFarlane, and benefiting Defendants, such that Plaintiffs the McFarlane Companies and McFarlane are entitled to all appropriate punitive damages, in addition to a full recovery of their attorneys' fees and costs.

## COUNT III

## BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY

55. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-54.

56. During their employment with TMPI, Al Simmons and Melanie Simmons owed TMPI a fiduciary duty and duty of loyalty to act at all times solely for the benefit of TMPI.

57. Upon information and belief, the Simmons breached their fiduciary duties and duties of loyalty while still employed by TMPI by, among other things, not devoting their best efforts to TMPI, preparing to operate a competing business or not informing TMPI of their efforts to interfere with TMPI's customer and business relationships, and misleading TMPI and McFarlane regarding their future plans, all which had an adverse impact on TMPI.

58. TMPI has been damaged by the Simmons' willful breaches of their fiduciary duties and duties of loyalty to TMPI.

59. As a result of the Simmons' actions, TMPI has been injured and faces irreparable injury. TMPI is threatened with losing employees, customers, income and goodwill in amounts that may be impossible to determine unless the Simmons are enjoined and restrained by order of this Court.

## COUNT IV

## FALSE ENDORSEMENT
## (15 U.S.C. § 1125(A))

60. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-59.

61. Defendants have written, and are advertising and distributing the Book in interstate commerce.

62. The Book is a "good" within the definition of 15 U.S.C. § 1125(a).

63. Defendants' Book contains cover art and a title page that read, "with contributions by *Spawn* Creator [sic] Todd McFarlane."

64. Likewise, Defendants' advertising for the Book makes reference to "contributions" thereto by Plaintiff McFarlane, and makes use of Plaintiff McFarlane's name, likeness and identity, for example by stating: "Todd McFarlane named Al . . . as the alter ego of the Spawn character," "Al and Todd have lived nearly parallel lives."

65. Defendants' use of Plaintiff McFarlane's name, likeness and identity in support of their advertising and distribution of the Book is directly related to the goods Defendants are offering to the consuming public.

66. Defendants' use of Plaintiff McFarlane's name, likeness and identity in connection with their advertising, promotion and distribution of the Book constitutes a false or misleading description of fact or misrepresentation of fact that is likely to cause confusion to consumers, and deceives consumers as to the affiliation, connection and/or association with, and endorsement by Plaintiff McFarlane in violation of Section 43(a) of the Lanham Act.

67. Defendants' use of Plaintiff McFarlane's name, likeness and identity was made without Plaintiff's permission, or license.

68. Plaintiff McFarlane has been, and is likely to continue to be, harmed by this false or misleading use of his name, likeness and identity. As a proximate result of that unauthorized use, Plaintiff McFarlane has been injured in an amount not yet fully determined, but believed to be in excess of $75,000, exclusive of costs and interests.

69. Moreover, Plaintiff McFarlane has been and will continue to be irreparably injured as a result of Defendants' conduct, and he has no adequate remedy at law, entitling him to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

70. Furthermore, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), Plaintiff McFarlane is entitled to monetary damages, corrective advertising costs, Defendants' profits, costs, and prejudgment interest.

71. Plaintiff McFarlane is informed and believes, and thereon alleges, that Defendants' use of Plaintiff McFarlane's name, likeness and identity was done knowingly, intentionally, wantonly and willfully, such that this is an exceptional case under Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), thereby entitling him to recover his attorneys' fees and up to three-times his actual damages.

## COUNT V

## FALSE ADVERTISING
## (15 U.S.C. § 1125(A))

72. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-71.

73. Defendants' Book is and has been sold in interstate commerce.

74. Defendants' Book contains cover art and a title page which read "with contributions by *Spawn* Creator [sic] Todd McFarlane." Likewise, Defendants' advertising for the Book makes reference to "contributions" by Plaintiff McFarlane, and makes use of Plaintiffs' *Spawn* character. Likewise, Defendants' advertising suggests that: (a) Defendants "begin working closely with" Plaintiff McFarlane, and (b) as a result of this, *Spawn* "expanded into a line of action figures, a successful movie by New Line Cinema and an Emmy and Grammy award-winning HBO animated mini-series."

75. Defendants' advertising in this manner is false, deceptive, and misleading. Defendants' false, deceptive, and misleading advertising is likely to deceive consumers and materially influence their purchasing decisions with regard to the Book.

76. Defendants' false, deceptive, and misleading advertising has caused and will continue to cause irreparable harm to Plaintiffs McFarlane and the McFarlane Companies. Unless Defendants are enjoined from continuing the aforementioned unlawful acts, Plaintiffs McFarlane and the McFarlane Companies will suffer irreparable

harm for which they have no adequate remedy at law, such that they are entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

77. As a direct and proximate result of Defendants' false, deceptive, and misleading advertising, Plaintiffs McFarlane and the McFarlane Companies have suffered damages in an amount not yet fully determined, but believed to be in excess of $75,000, exclusive of costs and interests. Furthermore, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), Plaintiffs McFarlane and the McFarlane Companies are entitled to monetary damages, corrective advertising costs, Defendants' profits, costs, and prejudgment interest.

78. Plaintiffs McFarlane and the McFarlane Companies are informed and believe, and thereon allege, that Defendants' false, deceptive, and misleading advertising was done knowingly, intentionally, wantonly and willfully such that this is an exceptional case under Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), thereby entitling Plaintiffs to recover their attorneys' fees and up to three-times their actual damages.

79. Pursuant to 15 U.S.C. § 1118, Plaintiffs McFarlane and the McFarlane Companies are also entitled to, and seek, a destruction order requiring all advertisements in Defendants' possession bearing the false, deceptive, or misleading use of, *inter alia*, Plaintiff McFarlane's name, likeness and identity, to be delivered up and destroyed.

**COUNT VI**

**TRADEMARK INFRINGEMENT**
**(15 U.S.C. § 1125(A))**

80. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-79.

81. Plaintiff TMP is the owner of a valid, federally registered trademark, Registration No. 3020406, in the *Spawn* name.

82. Plaintiff TMP similarly owns other valid, federally registered and/or common marks in related "Spawn" names, each of which arises out of the *Spawn* comic book franchise (collectively with Registration No. 3020406, the "Marks").

83. Plaintiff TMP's extensive use and publicity of the Marks has resulted in their having gained acquired distinctiveness and secondary meaning. Plaintiff TMP is informed and believes, and thereon alleges, that as a result of the foregoing, the Marks are strong and well-known, and thus entitled to a broad scope of protection.

84. Notwithstanding the foregoing, Defendants have used the Marks in interstate commerce, without the consent of Plaintiff TMP. Specifically, Defendants have used the Marks in connection with the publication, distribution, promotion and advertising of their Book. Defendants' unauthorized use of the Marks has been done in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of Defendants' Book.

85. Plaintiff TMP is informed and believes, and thereon alleges, that Defendants' use of the Marks is intended to falsely indicate an affiliation, connection, association between Defendants and Plaintiffs McFarlane and TMP, and/or sponsorship or approval of the Book by Plaintiff TMP and/or Plaintiff McFarlane.

86. Plaintiff TMP is informed and believes, and thereon alleges, that Defendant has used the Marks for his own commercial gain. Specifically, Defendant has used the Marks in an effort to increase sales by attracting fans of *Spawn* and the literary/artistic work of Todd McFarlane, as these individuals are Defendants' desired audience.

87. As a result of Defendants' infringing acts, Plaintiff TMP has been injured in an amount not yet fully determined, but believed to be in excess of $75,000, exclusive of costs and interests.

88. In addition to the foregoing, as a result of Defendants' infringing acts, Plaintiff TMP has been and will continue to be irreparably injured as a result of Defendants' conduct, and it has no adequate remedy at law, entitling it to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

89. Furthermore, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), Plaintiff TMP is entitled to monetary damages, corrective advertising costs, Defendants' profits, costs, and prejudgment interest.

14

90.     Plaintiff TMP is informed and believes, and thereon alleges, that Defendants' infringing acts were done knowingly, intentionally, wantonly and willfully such that this is an exceptional case under Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), thereby entitling Plaintiff TMP to recover its attorneys' fees and up to three-times its actual damages.

## COUNT VII

## COPYRIGHT INFRINGEMENT
(**17 U.S.C. § 106,** *et seq.***)**

91.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1-90.

92.     Plaintiff TMP is the owner of the copyright in the contents of various photographs, artwork, and literary text (the "Work").  Plaintiff TMP holds registered copyrights in and to the Work with the U.S. Copyright Office.

93.     Defendants have copied portions of the Work, including without limitation, text, artwork and photographic images, and reproduced the same in the Book, and the advertising for the Book.

94.     As a result of the foregoing, Defendants have infringed upon Plaintiff TMP's copyrighted Work by reproducing, displaying and using it without Plaintiff TMP's knowledge or consent.

95.     Upon information and belief, Defendants' copying and displaying of Plaintiff TMP's Work was done knowingly and intentionally, and knowingly done in disregard of Plaintiff TMP's legal rights.

96.     Plaintiff TMP has been and will continue to be irreparably injured as a result of Defendants' conduct, and it has no adequate remedy at law, such that it is entitled to preliminary and permanent injunctive relief preventing Defendants' further unauthorized distribution, marketing and use of the Work.

97.     In addition to the foregoing, because Defendants' infringement of the Work was done after Plaintiff TMP obtained copyright registration in the same, Plaintiff TMP

1  is entitled to statutory damages and attorneys' fees incurred as a result of Defendants'
2  infringement.

3      98.    Plaintiff TMP is informed and believes, and thereon alleges, that it is also
4  entitled to: (i) an impounding and destruction order covering all physical and electronic
5  copies and derivatives that Defendants made or used in violation of Plaintiff TMP's
6  copyrights; (ii) all appropriate direct and consequential damages including any and all
7  profits Defendant made as a result of the infringing activity; and (iii) an award of all
8  appropriate fees and costs as against Defendant and those persons acting in concert with
9  him as provided in 17 U.S.C. §§ 101 et seq.

## COUNT VIII

## COMMON LAW MISAPPROPRIATION

12      99.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-98.

13      100.    Plaintiffs McFarlane and TMP are the owners of the Work, which
14  Defendants physically misappropriated for purposes of reproducing in the Book, and in
15  the advertising for the Book. Defendants continue to exercise dominion and control over
16  the property appropriated.

17      101.    As a result of the foregoing, Plaintiffs McFarlane and TMP have been injured
18  in an amount not yet fully determined, but believed to be in excess of $75,000, exclusive
19  of costs and interests.

## COUNT IX

## TRADE LIBEL

22      102.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-101.

23      103.    Through publication of the Book and in promotional materials and elsewhere,
24  Defendant willfully, and without justification or privilege, published to other persons the
25  statement that he was, in whole or in part, responsible for the expansion and success of
26  the *Spawn* franchise.

104. The statement that Defendant was responsible for the expansion or success of the *Spawn* franchise is false and damages the Plaintiffs' reputation as the creator of, among other things, the *Spawn* character and resulting franchise.

105. As a result of Defendants' publication of the false statement regarding his involvement with the success of the *Spawn* franchise, Plaintiff McFarlane has suffered injury to his reputation, and Plaintiff TMP has suffered pecuniary loss in an amount to be determined at trial.

106. Defendants' publication of the false statement regarding Al Simmons' involvement with the success of the *Spawn* franchise was done with malice and oppression in that Defendants knew their statements were false. Based on this, Plaintiffs are entitled to seek punitive damages in an amount to be determined at trial.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs request the following relief against Defendants:

A. That upon application, Defendants, along with their respective agents, independent contractors, employers, employees, and those persons in active concert or participation with the Defendants:

(i) be enjoined from misappropriating or threatening to misappropriate the McFarlane Companies' trade secrets and confidential information and that defendants be specifically required to return to TMPI all trade secrets and confidential information in their possession, including all copies thereof;

(ii) be enjoined from revealing, utilizing, or trading upon the McFarlane Companies' and McFarlane's proprietary rights, proprietary information, trade secrets and confidential information; and

(iii) be compelled to account for the whereabouts of the McFarlane Companies' proprietary information and produce for inspection all computers on which the McFarlane Companies' information may have resided;

B. Awarding Plaintiffs damages they have suffered, in an amount to be proven at trial, but in excess of $75,000, excluding interest and costs;

C. Awarding Plaintiffs exemplary damages for willful and malicious misappropriation of trade secrets;

D. Awarding Plaintiffs' statutory damages;

E. Awarding Plaintiffs compensatory, punitive, and exemplary damages;

F. Awarding Plaintiffs actual or reasonable attorneys' fees and the costs of this action, pursuant to the Arizona Uniform Trade Secrets Act, federal law and A.R.S. § 12-341.01;

G. Awarding Plaintiffs such further relief as the Court deems just.

DATED this 26th day of September, 2012

BRYAN CAVE LLP


By  /s/Jay A. Zweig
    Jay A. Zweig
    Melissa R. Costello
    Two North Central Avenue, Suite 2200
    Phoenix, Arizona  85004-4406
    Attorneys for Plaintiffs

**VERIFICATION**

STATE OF ARIZONA   )
                   ) ss.
County of Maricopa )

Todd McFarlane, being first duly sworn upon his oath, states:

I am the ____CEO____ of Plaintiffs Todd McFarlane Productions, Inc., TMP International, Inc., and Todd McFarlane Entertainment, Inc. and am authorized to and make this Verification based upon my own personal knowledge.

I have read the foregoing Verified Complaint and verify that the statements made therein are true to the best of my knowledge, information and belief and the business records maintained by Todd McFarlane Productions, Inc., TMP International, Inc., and Todd McFarlane Entertainment, Inc.

_____
Todd McFarlane

SUBSCRIBED AND SWORN TO before me this 26 day of September, 2012 by Todd McFarlane.

_____
Notary Public

My Commission Expires:

6/9/14

Cloudia Dame
Notary Public - Arizona
Maricopa County
My Commission Expires
June 9, 2014

726292.5

19